UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **DAVID McCLURE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-CV-150-SNLJ |
| | ) |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff David McClure's application for supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff now seeks judicial review [#12]. As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**I.      Procedural History**

Plaintiff McClure was born in 1967. He testified that he had 20 years of experience as a bartender and waiter while living in Las Vegas and has a 10th or 11th Grade education. He moved to Missouri in 2009 and worked at several restaurants. In 2017, he worked as a hospital cleaner at nights, but he could not work the required hours and was falling asleep. After his alleged disability onset date, August 29, 2017, he worked about one month at three fast food restaurants. He quit his job at Taco Bell because of the stress of the job; he quit his job at Dairy Queen because he couldn't keep

1

up with the fast pace; and he quit his job at Fazoli's before they did not give him enough hours and it was extremely stressful.  He said his symptoms would "come and go at will" and his employer could not count on him.

Plaintiff has a long history of drug and alcohol abuse. He testified that he had not had a drink since completing inpatient treatment eight months before the hearing.  The ALJ asked plaintiff whether he could return to work now that he was sober, but plaintiff said no because "the older I get, the worse it gets."  At the time of his hearing, he was visiting the Community Counseling Center for mental health treatment.  A psychiatrist prescribed medication to treat panic attacks, anxiety, and flashbacks, and he also received "talk therapy" with a therapist.  He expressed frustration with medications because he said he had tried a lot of medications, but that they eventually stop working or cause intolerable side effects.  However, he testified that although the anti-anxiety medication was "not a cure all," but it helped "take the edge off" and kept him from "really going bonkers."  He said he no longer felt "sick and disgusted all the time" and described his panic attacks as "manageable" and that minimizing social exposure "helps me a great deal."

Plaintiff lives alone in an apartment from which he can walk to everything he needs.  He does not drive and prefers to walk.  He spends 90 percent of his time at home alone.  He can walk to Walmart and goes there early in the morning or late at night to avoid crowds.  He also goes to the library to check out books, movies, and to use the computer.

Plaintiff applied for disability insurance benefits and supplemental security income on October 26 and November 17, 2017, respectively. He was denied initially on March 5, 2018, and filed a request for hearing, which was held on June 11, 2019. The ALJ issued an unfavorable decision on June 28, 2019.

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§

3

404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus,

4

"there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

5

### III. The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and he had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found plaintiff suffers from the following severe impairments:  unspecified bipolar disorder, generalized anxiety disorder, posttraumatic stress disorder, alcohol use disorder, and neuropathy. [Tr. 15.]  At Step Three, the ALJ determined plaintiff's severe impairments did not meet or equal a listed impairment.

Next, in Step Four, the ALJ determined plaintiff's RFC.  The ALJ found that plaintiff

> has the residual functional capacity to perform medium work as defined in 20 C.F.R 404.1567(c) and 416.967(c) but with additional limitations.  He can occasionally perform all postural activities, including climbing ramps and stairs. He should avoid concentrated exposure to hazards.  From a mental standpoint, he is able to perform simple, routine tasks with social interaction not more than occasional with supervisors, coworkers, and the public.

[Tr. 17.]  The ALJ noted that plaintiff

> alleged…he is unable to work due to mental impairments and symptoms, including depression, generalized anxiety, social anxiety, anxiety attacks, posttraumatic stress disorder with nightmares and flashbacks, agoraphobia, hendonphobia, dissociative personality disorder, trouble sleeping due to insomnia, problems with concentration and focusing, cognitive problems, and learning disability.  In a report submitted to the State agency, the claimant additionally reported alcoholism and experiencing extreme depression, anger problems, and difficulty being around others.  He stated that he isolates himself in his home.

[Tr. 18.]  The ALJ observed that the plaintiff had made similar allegations at his hearing. His panic attacks "last from a few seconds to a few minutes," but, at the same time,

6

plaintiff "also stated that his panic attacks are managed if he minimizes his social exposure." In addition,

> He testified that he experiences depressive episodes seven to 17 days a month, during which time he does not shower and is not able to clean. He stated that his mental symptoms affect his sleep, and he only gets 5 hours of sleep in a 24-hour period that is broken up. The claimant further testified that he has attempted to work since the alleged onset date, but those jobs ended due to the stress of the work or being too fast-paced.

[Tr. 18.]

The ALJ concluded that the plaintiff's impairments "could be reasonably expected to cause some but not all the alleged symptoms and severity," and she found that the plaintiff's "statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence…." [Tr. 18.]

Based on this RFC determination, the ALJ determined plaintiff could perform his past work as a kitchen helper and hospital cleaner, which she classified as medium, unskilled work. The ALJ found that plaintiff could also work as automobile detailer, laundry worker, and janitor, for which significant jobs exist in the national economy. The ALJ thus denied plaintiff's claim.

### IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240

7

F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

**V.     Discussion**

Plaintiff contends that his case should be remanded because the ALJ's RFC determination differed from the opinion of plaintiff's psychiatrist, Dr. Johnson, without sufficient explanation.

The ALJ discussed Dr. Johnson's opinion as follows:

> The claimant's psychiatrist, Dr. Johnson, provided an opinion dated August 6, 2018. Dr. Johnson opined that the claimant would be absent four days of work and would be off task 10 percent of the time. Similar to Dr. Maxwell's opinion, this portion of Dr. Johnson's opinion is more extreme than what is supported by the evidence overall, including Dr. Johnson's own observations, the claimant's overall pattern of treatment during the relevant period, and his activities of daily living, including going to the library and grocery shopping. Thus, this portion of Dr. Johnson's opinion is not persuasive.

8

> However, Dr. Johnson also indicated that the claimant has only mild to moderate mental limitations as a result of [his] impairments.  Such moderate limitations include the ability to understand, remember, and carry out detailed instructions; to perform activities within a schedule and maintain regular attendance; sustain an ordinary routine without special supervisions; complete a normal workday and workweek; accept instructions and respond appropriately to criticism from supervisors; and be award of normal hazards and take appropriate precautions.  The portion of her opinion that the claimant has no more than moderate mental limitations is supported by the evidence overall, including Dr. Johnson's observations of intact memory and good concentration and attention, along with the fact that he was often calm and cooperative. Moreover, it is consistent with his overall treatment with medication and therapy, his often noncompliance with medication, and his activities of daily living.  This portion of her opinion is therefor persuasive.

[Tr. 26 (internal citations omitted).]

Plaintiff argues that the ALJ, despite finding Dr. Johnson's moderate limitations credible and well-supported, failed to explain why the credible limitations were not adopted as part of the RFC.  Plaintiff states that the ALJ's RFC determination conflicted with Johnson's opinion in relevant areas related to plaintiff's mental functioning and was silent regarding other areas of Johnson's opinion.

An RFC is the most a claimant can do despite the combined effect of all limitations.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant has the burden to prove the RFC.  *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  An ALJ develops the RFC based on all relevant evidence of record, including the claimant's subjective statements about his limitations and medical opinion evidence. *See Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2015); *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) ("[I]n evaluating a claimant's RFC, an ALJ is not limited to considering

9

medical evidence exclusively."); *see also* 20 C.F.R. §§ 404.1545, 416.945.  An ALJ considers the claimant's subjective complaints when assessing the RFC.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1983); 20 C.F.R. §§ 404.1529, 416.929.

In evaluating plaintiff's subjective complaints and determining his RFC, the ALJ discussed plaintiff's mental health treatment notes at length.  *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (noting that one of the factors the Commissioner considers is the "treatment . . . you receive or have received for relief of your pain or other symptoms").  Those notes showed that exacerbations in plaintiff's symptoms coincided with alcohol abuse and medication misuse [Tr. 352-53, 366, 406, 442-44, 480, 486, 502, 506, 533].  After plaintiff had inpatient treatment and took his medication as prescribed, his symptoms improved [Tr. 46-47, 468, 472, 474, 492, 502, 518].

The record reflects the following timeline:

- In July 2017, one month before his disability allegedly began, plaintiff told his psychiatrist, Courtney Johnson, M.D., that he "self discontinued" Prozac because of possible side effects  Nonetheless, plaintiff's mood was "not too bad" and his affect was euthymic, full, and stable.

- In November 2017, plaintiff was monitored for one night at the emergency room when he relapsed on alcohol, but after being treated with Librium, he was "doing much better." He refused the doctor's instructions to treat his substance use at a separate facility.

10

- In December 2017, Plaintiff reported increased irritability and worsening mood, but Dr. Johnson expressed concerns that he was misusing Gabapentin because he continued to run out of it early.
- Plaintiff returned to the emergency department in mid-January 2018 after he excessively drank cooking wine and ingested four tablets of an unknown medication  He again refused to be hospitalized for substance abuse treatment.
- A few weeks later, plaintiff said he had not been taking any medication, but he described his mood as "calm and pretty decent."
- In late February 2018, plaintiff relapsed on alcohol again, and at his visit with Dr. Johnson in March 2018, he said he was not taking his medications. He said he was frustrated, irritable, and restless.
- In March 2018, plaintiff started individual therapy with Jane Maxwell, Ph.D. and discussed his recent relapse.  Dr. Maxwell observed that at first he minimized his relapse, but by the end of their session, he was remorseful and told hold her that he appreciated her efforts to help him.
- Two weeks later, he was "a bit down and irritable," but "in a fairly decent mood."  He said that things were "manageable," as he had started going to a support group for his addiction.  Later that month, he said that his support group was "helpful."  Plaintiff also started individual substance abuse therapy to discuss relapse triggers and ways of counteracting them.

11

- In April 2018, plaintiff said he had "not had any setbacks," and Dr. Maxwell noted that he was "doing fairly well."

- Later that month, Plaintiff was "kind of irritable" with decreased concentration and intermittent nightmares, but Dr. Johnson noted that plaintiff had not been taking any of his medications.

- The following month, Dr. Johnson noted again that plaintiff had unilaterally discontinued two of his medications.

- Plaintiff was hospitalized overnight in June 2018 because he had been binge drinking.  However, one week later, plaintiff told Dr. Johnson that his Buspar medication "seemed to work pretty well."

- In July 2018, plaintiff told his therapist that he was "incredibly happy" because he had started a new fast food job, and he felt it would give him something to do and relieve his financial stress.  The therapist observed pleasant mood with full affect, good eye contact, and appropriate attire.

- Later that month, plaintiff reported that he was "really enjoying" his job.  At the end of the month,  Dr. Johnson again noted that plaintiff had been noncompliant with medication for a week  She described plaintiff's mood as "calm and focused" when he properly took his medication, but "more restless" when he did not.

- Plaintiff relapsed in late August 2018 and lost his job.  He spent 18 days at a rehabilitation center in September 2018, but after he was released, Dr.

12

> Johnson observed normal mood, speech, language, cognition, fund of knowledge, and memory. Plaintiff displayed good concentration and attention.
>
> - In October 2018, he started working at Dairy Queen, but he lost the job after about a month because he did not take his medication for five days,
> - In January 2019, he started working a new job at Taco Bell.
> - In March 2019, Plaintiff described his mood as "not too bad; okay," and his affect was irritable but euthymic. Dr. Johnson observed good concentration and attention span and intact memory.

The ALJ noted, on review of that evidence, that plaintiff's treatment was generally conservative. Plaintiff was hospitalized only because of his alcohol use, and his other treatment consisted of medication and therapy. His condition improved with treatment when he complied with it. Indeed, Dr. Johnson described plaintiff as "calm and focused" when he properly took his medication, but "more restless" when he did not. ALJs may properly discredit a claimant's allegations where the evidence shows noncompliance regarding taking medication, following a diet, and abstaining from drugs and alcohol. *Wildman v. Astrue*, 596 F.3d 959, 968-69 (8th Cir. 2010). "Impairments that are controllable or amenable to treatment do not support a finding of disability." *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009).

The ALJ also considered plaintiff's moderate findings on examination. Dr. Johnson observed disheveled appearance and poor or borderline judgment and insight, but she also observed that plaintiff was calm and cooperative with normal speech, intact

13

memory, and good concentration and attention.  Dr. Maxwell and plaintiff's therapists observed mostly normal findings as well.

In addition, the ALJ considered plaintiff's activities, which were more extensive than one would expect for someone with disabling mental impairments.  Plaintiff lived alone and had no problems with personal care tasks.  He prepared simple meals and did housework such as cleaning and laundry.  Although he did not have a driver's license, he walked everywhere and found it "therapeutic."  He shopped at Walmart (when it was not crowded) and went to the library to check out movies and books and use the computer.  He was able to concentrate while playing video games, downloading music, or watching television.  He also worked at times during the relevant period.

In determining plaintiff's RFC, the ALJ also relied on medical opinion evidence from the State agency psychological consultant.  *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (noting that federal or state agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation).  In February 2018, Raphael Smith, Psy.D., reviewed the medical records that were available at the time and concluded that plaintiff had moderate limitations in numerous abilities. Dr. Smith concluded that plaintiff could understand, recall, and carry out simple instructions and procedures, and could concentrate and persist at familiar tasks requiring some independent judgment and involving minimal variations.  He also concluded that plaintiff could interact with supervisors and coworkers for task completion in an environment with limited interpersonal demands and could occasionally interact with the public.  The ALJ found  Dr. Smith's opinion persuasive because it was supported by the evidence overall.

14

As the ALJ noted, plaintiff's hospitalizations were due to alcohol use rather than psychiatric symptoms, and his providers' observations indicated at most moderate limitations.

The ALJ also relied somewhat on the opinion of plaintiff's psychiatrist, Dr. Johnson.  In August 2018, Dr. Johnson completed a Medical Source Statement, indicating mild limitations in 10 of 20 categories of mental functioning and moderate limitations in the remaining 10 categories.  (Notably, the other limitation options for each category were "Marked Limited" and "Extremely Limited," and those options were not assigned to any category.) Dr. Johnson also checked boxes concluding that plaintiff would miss four days of work per month and be off-task ten percent of a workday.  The ALJ found Dr. Johnson's assessment of mild to moderate limitations persuasive because it was consistent with (and thus supported by) Dr. Johnson's mostly benign examination findings.  As the ALJ also noted, that assessment was consistent with plaintiff's treatment of medication and therapy and his fairly normal activities, as well as evidence that noncompliance contributed to his symptoms.

The ALJ found that the remainder of Dr. Johnson's opinion (that plaintiff would be absent four workdays per month and be off-task percent of the workday) was inconsistent with this same evidence.  In challenging the ALJ's RFC finding, plaintiff argues the RFC did not include each of the moderate limitations that Dr. Johnson assessed.  As plaintiff notes, Dr. Johnson concluded that plaintiff had moderate limitations performing activities within a schedule, sustaining an ordinary routine, working in coordination with or in proximity to others, completing a normal workday or

15

workweek without interruption from psychologically-based symptoms, responding appropriately to criticism from supervisors, and maintaining socially appropriate behavior. However, the regulation does not require an ALJ to address each and every part of a medical opinion to show that the entire opinion was properly considered; nor does it require the ALJ to entirely adopt each and every part of an opinion simply because she finds it persuasive. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

Regardless, contrary to plaintiff's assertion, the ALJ did not reject the moderate limitations that Dr. Johnson assessed. The ALJ translated those limitations into an RFC of simple, routine tasks with occasional interaction with coworkers, supervisors, and the public. This RFC is consistent with the Mental RFC assessment of Dr. Smith, who assessed plaintiff with several of the same moderate limitations that Dr. Johnson assessed. Plaintiff argues that the record "supported a limitation in [his] social abilities." However, the issue is not whether plaintiff had social limitations, but whether those limitations were so severe that they were disabling. *See Baker v. Apfel*, 159 F.3d 1140, 1145 (8th Cir. 1998) (holding that while the claimant experienced arthritic pain and headaches, it was "not so severe as to be disabling"). The ALJ, Dr. Johnson, and Dr. Smith each concluded that plaintiff's social limitations were moderate, rather than marked or extreme. The record supports that conclusion. As the ALJ noted, Dr. Johnson observed that plaintiff had fair eye contact but was calm and cooperative over and over again. Likewise, plaintiff was able to interact normally with therapists. In addition, although plaintiff said he had social anxiety and spent most of his time at home alone, he was able to go to Walmart and the library during uncrowded times. Plaintiff further

16

claims that a restriction of occasional interaction is not the same as one that limits whether someone works in proximity with others. He also claims that a restriction of occasional interaction does not address the ability to respond to supervision. However, these are distinctions without a difference. Dr. Smith found that plaintiff had moderate limitations working with or in proximity to others without being distracted by them, and moderate limitations dealing with supervisors, but, like the ALJ's RFC finding, Dr. Smith's RFC assessment was for simple, routine tasks with occasional interaction with supervisors, coworkers, and the public. Ultimately, the moderate limitations that Dr. Johnson and Dr. Smith assessed are not inconsistent with the ALJ's RFC finding. Plaintiff relies unpersuasive out-of-district cases. For example, *Richardson v. Colvin*, 5:16-06148-CV-RK, 2017 WL 6420283, at *2 (W.D. Mo. Dec. 18, 2017), involved marked limitations and not merely moderate limitations involved here. Plaintiff also relies on *Griffith v. Comm'r of Soc. Sec.*, CIV.A. 12-15079, 2014 WL 1213257, at *16 (E.D. Mich. Feb. 14, 2014), report and recommendation adopted, 12-15079, 2014 WL 1224807 (E.D. Mich. Mar. 24, 2014), but that case did not even reverse the Commissioner's decision.

     Ultimately, plaintiff argues that the record supports a more restrictive RFC than the one crafted by the ALJ, but that argument amounts to nothing more than an alternative view of the evidence. The standard of review is whether substantial evidence supports the ALJ's findings, not whether substantial evidence supports contrary findings. *See England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007) ("If substantial evidence supports the decision, we will not reverse, even if substantial evidence could have been

marshaled in support of a different outcome.") (citation omitted).   The ALJ relied on evidence that a "reasonable mind" would accept as adequate to support the conclusion that plaintiff could perform unskilled work with occasional social interaction. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

### VI.   Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 30th day of August, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE